**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JAMES RANKIN,

     Plaintiff,

         v.

POLICE OFFICER JOHN MAJIKES, *et al.*,

     Defendants.

CIVIL ACTION NO. 3:CV-14-699

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court are Motions to Dismiss Plaintiff James Rankin's ("Rankin") Amended Complaint filed by Plains Township Defendants ("Plains Defendants")[1] (Doc. 16) and Wilkes-Barre City Defendants ("City Defendants")[2] (Doc. 17).  Rankin asserts that he was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution in relation to an incident that occurred on April 9, 2012 in which he was shot by a City of Wilkes-Barre police officer.  In addition, Rankin asserts state law claims for assault, battery, and intentional infliction of emotional distress.  Plains Defendants and City Defendants have moved to dismiss all claims.  For the reasons that follow, the motions to dismiss will be granted in part and denied in part.

---

[1]     The Plains Defendants are: Sergeant Dale Binker ("Binker"); Officer Daniel Lewis ("Lewis"); Officer Michael Smith ("Smith"); Chief of Police James T. O'Malley ("O'Malley"); and Plains Township. (*Am Compl.*, ¶¶ 16-20.)

[2]     The City Defendants are: Officer John Majikes ("Majikes"); Sergeant Scott Hine ("Hine"); Officer Joseph Zigler ("Zigler"); Officer Stephen Freeman ("Freeman"); Officer Jason Dudick ("Dudick"); Officer Stanley Wychock ("Wychock"); Officer Cory Dumont ("Dumont"); Sergeant Paul Crawford ("Crawford") Officer Shawn Whitebread ("Whitebread"); Sergeant Gary Valatka ("Valatka"); Deputy Chief of Police Donald Crane ("Crane"); Chief of Police Gerard Dessoye ("Dessoye"); and City of Wilkes-Barre. (*Am Compl.*, ¶¶ 2-14.)

### I. Background

The facts as set forth in the Amended Complaint are as follows:

On or about April 9, 2012 at approximately 4:00 a.m., Rankin was lawfully present in the area of Kidder and Scott Streets in Wilkes-Barre, Pennsylvania. (*Am. Compl.*, ¶ 28.) At that time, individual Officer Defendants[3] approached, aggressively pursued, and cornered Rankin. (*Id*. at ¶ 29.) Individual Officer Defendants falsely announced to each other that Rankin possessed a gun even though they did not have confirmation of this fact. (*Id*. at ¶ 30.) Rankin, however, did not possess a gun, nor did he pose a threat to individual Officer Defendants or the public. (*Id*. at ¶ 31.)

Individual Officer Defendants were aware of Rankin's precise location because they had set up a perimeter along Laurel Street and Scott Street where he remained under a set of steps. (*Id*. at ¶ 34.) Rankin was "boxed in" at that point, as individual Officer Defendants were aware of his location and had their eyes and weapons trained on and/or targeted at him. (*Id*. at ¶ 35.) Rankin remained under the steps for a short period of time because he was frightened of individual Defendant Officers. (*Id*. at ¶ 36.) Rankin's fear resulted from contact he had with members of the Wilkes-Barre Police Department approximately twenty-four hours earlier in which he was told to immediately leave the City. He was informed that he would be shot if he stayed. (*Id*. at ¶ 37.)

Because of the threat that he would be shot, "Rankin did what, in his mind, was the only thing he could think of to do so that he could avoid being shot; He remained underneath the steps and then tried to remove himself from the presence of the individual defendant officers before they could use unreasonable excessive force or deadly force

---

[3]     Individual Officer Defendants are: Majikes; Hine; Ziegler; Freeman; Dudick; Wychock; Dumont; Crawford; Whitebread; Valatka; Binker; Smith; and Lewis. (*Am. Compl.*, ¶ 29.)

against him." (*Id*. at ¶ 38.)  After Rankin got out from under the steps, he ran in front of or in close proximity to individual Officer Defendants approximately three times before he was shot in the back by Majikes. (*Id*. at ¶¶ 39, 45.)  Majikes was approximately four feet away from Rankin when he shot him with his police rifle. (*Id*. at ¶¶ 43-44.)  The location where Rankin was shot was well-lit, as there was at least one streetlight in the nearby vicinity. (*Id*. at ¶ 42.)  Although Majikes was one of thirteen law enforcement agents who were present at the scene at that time, he was the only officer that discharged his gun. (*Id*. at ¶¶ 40-41.) The other twelve law enforcement officials present at the scene when Rankin was shot were Hine, Ziegler, Freeman, Dudick, Wychock, Dumont, Crawford, Whitebread, Valatka, Binker, Lewis, and Smith. (*Id*. at ¶ 53.)

Before Rankin was shot, individual Officer Defendants did not use alternate methods of control and containment, such as verbal persuasion/warnings or hands-on techniques/control holds. (*Id*. at ¶ 60.)

Rankin was unarmed at the time he was shot, and none of the thirteen officers present at the scene ever observed a firearm. (*Id*. at ¶¶ 47-48.)  No firearm was ever recovered from Rankin, nor was one recovered in close proximity to him or from the scene where he was shot. (*Id*. at ¶¶ 49-51.)

After being shot, Rankin was transported by ambulance to Geisinger Wyoming Valley Hospital.  There, Rankin was treated for a single gunshot wound that entered the left flank, eleventh rib, and traveled to his twelfth verasic vertebrae. (*Id*. at ¶ 71.)  Within hours of being shot, Rankin's treating surgeon opined that he would most likely be paralyzed from the waist down. (*Id*.)  Rankin remains paralyzed from the waist down. (*Id*.)

In view of the foregoing events, Rankin commenced this action against Plains Defendants and City Defendants on April 9, 2014. (Doc. 1.)  Rankin subsequently filed his Amended Complaint on April 28, 2014. (Doc. 7.)  The Amended Complaint asserts claims

for violations of the First and Fourteenth Amendments to the United States Constitution (Count I), assault and battery (Count II), and intentional infliction of emotional distress (Count III).   Plains Defendants and City Defendants moved to dismiss the Amended Complaint in its entirety on June 30, 2014. (Docs. 16; 17.)  The motions to dismiss are now fully briefed and ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).  The Court does not consider whether a plaintiff will ultimately prevail. *See id.*  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955.  However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.*  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."

4

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).  As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937**.**

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar.*, 998 F.2d at 1196.  The Court need not assume the plaintiff can prove facts that were not alleged in

the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

Rankin alleges that all Defendants violated his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.  Additionally, Rankin asserts claims for battery, assault, and intentional infliction of emotional distress against all Defendants.  Defendants seek dismissal of all claims.

### A.    Section 1983 Claims

In Count I of the Amended Complaint, Rankin asserts claims against all Defendants for violations of his rights protected under the First and Fourteenth Amendments to the United States Constitution.  Rankin's constitutional claims are brought pursuant to 42 U.S.C. § 1983.  Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured, . . ." 42 U.S.C. § 1983.  "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)).

### 1.    Fourteenth Amendment

First, Rankin asserts that the use of force against him on April 9, 2012 violated his rights protected by the Fourteenth Amendment to the United States Constitution.  The Fourteenth Amendment provides, in pertinent part, that a state shall not "deprive any person

of life, liberty, or property, without due process of law; . . ." U.S. Const. amend. XIV, § 1. Defendants move to dismiss the Fourteenth Amendment claim based on the "more-specific-provision rule."

The "more-specific-provision rule" provides that "'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7, 117 S. Ct. 1219, 137 L. Ed. 2d (1997)).  Here, because the only allegations raised by Rankin fit within the Fourth Amendment's prohibition on unreasonable seizures, the "more-specific-provision rule" forecloses his Fourteenth Amendment claim. *See, e.g., Lawson v. City of Coatesville*, - - - F. Supp. 2d - - -, 2014 WL 7080708, at *7 (E.D. Pa. Aug. 19, 2014) ("where the Fourth Amendment covers alleged misconduct- such as searches and seizures without probable cause- a plaintiff's claims must be analyzed under the Fourth Amendment, not under the rubric of substantive due process."); *Piazza v. Lakkis*, No. 11-2130, 2012 WL 2007112, at *5-6 (M.D. Pa. June 5, 2012) (dismissing excessive force claim brought under the Fourteenth Amendment pursuant to the more-specific-provision rule).  Therefore, the Fourteenth Amendment claim against all Defendants will be dismissed.

## 2.    Fourth Amendment

Rankin also asserts in Count I of the Amended Complaint that Defendants seized him in violation of the Fourth Amendment to the United States Constitution.  The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. amend. IV.

"To state a claim for excessive force as an unreasonable seizure under the Fourth

7

Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Curley v. Klem*, 499 F.3d 199, 203 n.4 (3d Cir. 2007) (citing *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999)). "The use of excessive force is itself an unlawful 'seizure' under the Fourth Amendment." *Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006) (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004)).

In cases involving the application of deadly force,[4] the Third Circuit has set forth the following inquiry:

> Giving due regard to the pressures faced by the police, was it objectively reasonable for the officer to believe, in light of the totality of the circumstances, that deadly force was necessary to prevent the suspect's escape, and that the suspect posed a significant threat of death or serious physical injury to the officer or others?  In determining the reasonableness of all degrees of force, the Supreme Court has said that the factors to consider include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

*Abraham*, 183 F.3d at 289 (quoting *Graham*, 490 U.S. at 396, 109 S. Ct, 1865). "Other factors include the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Couden*, 446 F.3d at 497.  This standard is one of objective reasonableness, and looks to "'the reasonableness of the officer's belief as to the appropriate level of force[,]' which 'should be judged from [the officer's] on-scene perspective,' and not in the '20/20 vision of hindsight.'" *Curley*, 499 F.3d at 206 (alterations in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 205, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

---

[4]    As stated by the Third Circuit, "an application of 'deadly force' may not result in death . . . ." *In re City of Phila. Litig.*, 49 F.3d 945, 966 (3d Cir. 1995); *see also Ryder v. City of Topeka*, 814 F.2d 1412, 1416 n.11 (10th Cir. 1987) ("the use of deadly force does not occur only when the suspect actually dies.").

### a.    Plains Defendants

All Plains Defendants seek dismissal of the Fourth Amendment claim for failure to state a claim upon which relief can be granted.  Plains Defendants argue that because "the Plains Township officers[5] used absolutely no force against Plaintiff Rankin," the Fourth Amendment claim against them should be dismissed with prejudice. (Doc. 21, 10.)  In opposition, Rankin contends that when he was "surrounded by the Plains Township Defendants who were armed police officers, if [sic] is his position that he was 'seized'; tantamount to a seizure which would occur if he had been shot." (Doc. 30, 11.)

"A person is seized under the Fourth Amendment only when 'his freedom of movement is restrained' either 'by means of physical force or a show of authority.'" *Gwynn v. City of Phila.*, 719 F.3d 295, 300 (3d Cir. 2013) (quoting *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)).  Here, Rankin indicates that his seizure claim against Plains Defendants is based on their "show of authority," *i.e.*, the drawn weapons.  *See, e.g., Couden*, 446 F.3d at 493 (officer's "conduct gave rise to an unconstitutional seizure under the Fourth Amendment when he approached the [plaintiffs'] vehicle with gun drawn."); *see also Baird v. Renbarger*, 576 F.3d 340, 346 (7th Cir. 2009) ("Other circuits have also held that pointing guns at persons who are compliant and present no danger is a constitutional violation.").

But, "[w]hen a person claims that her liberty is restrained by an officer's 'show of authority,' a seizure does not occur unless she yields to that show of authority." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (citing *California v. Hodari D.*, 499 U.S. 621, 626, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991); *United States v. Smith*, 575 F.3d 308, 313 (3d Cir. 2009)).  Restated, "'if the police make a show of authority and the suspect

---

[5]    The "Plains Township Officers" refer to those present at the scene on April 9, 2012, *i.e.*, Sergeant Binker, and Officers Smith and Lewis. (*Am. Compl.*, ¶ 33.)

does not submit, there is no seizure.'" *Couden*, 446 F.3d at 494 (quoting *United States v. Valentine*, 232 F.3d 350, 358 (3d Cir. 2000)).

Based on the allegations in the Amended Complaint, Rankin fails to allege an unconstitutional seizure occurred when he was surrounded by individual Officer Defendants on April 9, 2012.  Although he alleges that the officers made a show of authority when they trained their weapons on him, (*Am. Compl.*, ¶ 35), Rankin fails to plead that he submitted to that show of authority.  Rather, the factual averments in the Amended Complaint demonstrate that Rankin attempted to flee at that time.  Specifically, Rankin alleges that he "did what, in his mind, was the only thing he could think of to do so that he could avoid being shot; He remained underneath the steps and then tried to remove himself from the presence of the individual defendant officers before they could use unreasonable excessive force or deadly force against him." (*Id*. at ¶ 38.)  Rankin further asserts that he ran in close proximity to individual Officer Defendants approximately three times before he was shot. (*Id*. at ¶ 39.)  In view of these allegations, Rankin pleads that he did not submit to the Plains Township Officers' show of authority when they pointed their guns at him.  Therefore, he fails to allege that he was seized in violation of the Fourth Amendment.  The Fourth Amendment claim against the Plains Township Officers will be dismissed for failure to state a claim upon which relief can be granted.

Additionally, to establish individual liability against O'Malley, Plains Township's Chief of Police, Rankin must demonstrate that he "participated in violating [his] rights, or that he directed others to violate them, or that he . . . had knowledge of and acquiesced in his subordinates' violations." *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995). Here, as Rankin fails to allege an underlying violation of his constitutional rights by the Plains Township Officers, there was no improper action which Chief O'Malley could acquiesce. *See, e.g., Wargo v. Municipality of Monroeville*, 646 F. Supp. 2d 777, 788-89

10

(W.D. Pa. 2009).  Furthermore, because Rankin fails to allege that his constitutional rights were violated by the Plains Township Officers, his *Monell* claim against Plains Township also fails. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986); *see also Moore v. Union Cnty. Police Dep't*, No. 12-6847, 2014 WL 1577658, at *3 (D.N.J. Apr. 17, 2014) ("since the Complaint does not assert a Fourth Amendment claim against either individual police officer, it follows that it does not assert a claim under § 1983 against the police chief, the city, or the county for failure to train and supervise those officers."); *Whitaker v. Springettysbury Twp.*, No. 08-627, 2010 WL 2302295, at *1 n.2 (M.D. Pa. June 7, 2010) ("The *Monell* claims against the township, the police department, and Chief Eshbach must also fail based on the underlying determination that Officer Utter's use of lethal force was objectively reasonable and therefore not a violation of decedent's Fourth Amendment rights.").  Rankin's Fourth Amendment claim will therefore be dismissed as to all Plains Defendants.

### b.    City Defendants

All City Defendants also seek dismissal of Rankin's Fourth Amendment claim.  City Defendants argue in the alternative that, at a minimum, the excessive force claim should be dismissed as to all City Defendants besides Majikes.

### i.    Official Capacity Claims

First, City Defendants seek dismissal of all claims against individual City Defendants brought against them in their official capacities.   The official capacity claims will be dismissed.  "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed .2d 301 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)) (internal quotation marks omitted).  As a result, the Supreme Court has stated that "[t]here is no longer a need to bring official-capacity actions

11

against local government officials, for under *Monell*, *supra*, local government units can be sued directly for damages and injunctive or declaratory relief," *Graham*, 473 U.S. at 167 n.14, 105 S. Ct. 3099, and that "[s]uits against state officials in their official capacity therefore should be treated as suits against the State." *Hafer*, 502 U.S. at 25, 112 S. Ct. 358. Thus, because official capacity claims against an individual defendant are duplicative of claims brought against a municipality, "courts sitting in the Third Circuit have dismissed defendants sued in their official capacity when the same claims are made against the municipality." *Dubas v. Olyphant Police Dep't*, No. 11-1402, 2012 WL 1378694, at *4 (M.D. Pa. Apr. 20, 2012) (citing *Whaumbush v. City of Phila.*, 747 F. Supp. 2d 505, 510 n.2 (E.D. Pa. 2010); *Strickland v. Mahoning Twp.*, 647 F. Supp. 2d 422, 428 (M.D. Pa. 2009)); *Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006) ("a lawsuit against public officers in their official capacities is functionally a suit against the public entity that employs them. . . . Because Cuvo is suing Palmer Township, the suit against the officers in their official capacities is redundant."). As Rankin has brought suit against the City of Wilkes-Barre, the official capacity claims against individual City Defendants will be dismissed.

### ii.      City Officers and Sergeants (except Majikes)

The Fourth Amendment claim against the City Officers and Sergeants besides Majikes, *i.e.*, Hine, Ziegler, Freeman, Dudick, Wychock, Dumont, Crawford, Whitebread, and Valatka, will be dismissed for the same reason that the claim is subject to dismissal as to the Plains Township Officers: Rankin fails to allege that he submitted to their show of authority. Instead, he attempted to "remove himself from the presence of the individual defendant officers." (*Am. Compl.*, ¶ 38.) Accordingly, because he fails to plead any facts that he was unconstitutionally seized by the City Officers and Sergeants besides Majikes, Rankin fails to state a Fourth Amendment claim against Hine, Ziegler, Freeman, Dudick, Wychock, Dumont, Crawford, Whitebread, and Valatka. Thus, the Fourth Amendment

claim against these Defendants will be dismissed.

### iii.   Majikes

Defendant Majikes also moves to dismiss Rankin's Fourth Amendment claim. According to Majikes, an April 9, 2012 Pennsylvania State Police Incident Report (the "Incident Report") and the resulting Criminal Complaint filed against Rankin demonstrate that his use of deadly force against Rankin was reasonable.  Although the Incident Report and Criminal Complaint are not attached as exhibits to the Amended Complaint, Majikes, relying on the rule allowing a court to consider matters of public record on a motion to dismiss, argues that judicial notice should be taken of these documents and that they should be considered in resolving the instant motion. (Doc. 22, 6.)  Majikes asserts that "[t]he facts in those documents demonstrate that Plaintiff robbed and beat two victims, the victims reported that Plaintiff possessed a firearm and a stun gun, Plaintiff was fleeing the police, ignored the officers' warning to remain on the ground and show his hands, and was within several feet of Officer Majikes when he appeared to reach for a weapon before he was shot." (*Id*. at 13.)  In view of these "facts," Majikes concludes that the use of deadly force was objectively reasonable, and he did not violate Rankin's Fourth Amendment rights.

Rankin, however, disputes the reasonableness of Majikes' use of deadly force. Rather, he argues that the Amended Complaint sufficiently details that Majikes' actions were not objectively reasonable.

Majikes' motion to dismiss the Fourth Amendment claim will be denied.  First, the Incident Report and Criminal Complaint do not provide a basis for dismissal of Rankin's Fourth Amendment claim against Majikes.  While some courts have taken judicial notice of police reports and criminal complaints in resolving a motion to dismiss, *see, e.g., Gomez v. Town of W. New York,* No. 13-689, 2013 WL 5937415, at *7 n.3 (D.N.J. Nov. 4, 2013) ("The Court may take judicial notice of the criminal complaint as a matter of public record

without converting this motion to dismiss into a motion for summary judgment."); *Liang v. City of New* York, No. 10-3089, 2013 WL 5366394, at *5 (E.D.N.Y. Sept. 24, 2013) (taking judicial notice of police reports and court filings); *Wims v. N.Y.C. Police Dep't*, No. 10-6128, 2011 WL 2946369, at *2 (S.D.N.Y. July 20, 2011) (finding that a district court may take judicial notice of "arrest reports" when deciding a 12(b)(6) motion), others have declined to do so. *See, e.g., United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) ("the existence and content of a police report are not properly the subject of judicial notice."); *Henneberry v. City of Newark*, No. 13-5238, 2014 WL 4978576, at *4 (N.D. Cal. Oct. 6, 2014) ("The Court DENIES the request to take judicial notice of this exhibit because the contents of police reports or other police records are not proper subjects of judicial notice."); *Linden v. City of Lansing*, No. 13-638, 2013 WL 6858459, at *3 (W.D. Mich. Dec. 30, 2013) ("Most courts that have considered the issue have determined that police reports may not be considered as public records."). More importantly, however, is that even if judicial notice is taken of these documents, "a court may take notice of such documents only to establish their existence and legal effect, or to determine what statements they contained . . . not for the truth of the matters asserted." *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 223 (N.D.N.Y. 2014) (citation and internal quotation omitted); *accord Southern Cross Overseas Agencies, Inc. v. Wah Kwong Ghipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("on a motion to dismiss, we may take judicial notice of another court's opinion- not for the truth of the facts recited therein, but for the existence of the opinion . . . ."). Here, in moving to dismiss Rankin's Fourth Amendment claim, Majikes relies on the Criminal Complaint and Incident Report not for their existence or legal effect. Instead, he seeks dismissal of the claim based on what "[t]he facts in those documents demonstrate . . . ." (Doc. 22, 6.) But, as consideration of the Criminal Complaint and Incident Report for the truth of the facts they contain is not proper on a motion to dismiss, dismissal of the Fourth Amendment claim

against Majikes pursuant to the content of these documents is not warranted.

Second, the allegations in the Amended Complaint adequately state an excessive force claim against Majikes.  Rankin sufficiently alleges that he was seized by Majikes as "there is 'no question' that a shooting constitutes a seizure under the Fourth Amendment." *Curley*, 499 F.3d at 203 n.4 (citing *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)).  Moreover, Rankin alleges facts indicating that this seizure was unreasonable.  For example, Rankin avers that: (1) he did not possess a gun or pose a threat to the officers or public; (2) he was lawfully present in the area where he was shot; (3) he ran in front of Majikes three times before he was shot; (4) he was observed by twelve other officers and none of those officers discharged their weapons; (5) he was not observed possessing a gun; and (6) the scene where he was shot was illuminated by a streetlight. (*Am. Compl.*, ¶¶ 28-47.)  In view of these allegations, and noting that a determination on the reasonableness of the use of force depends on "all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force," and that "[t]he reasonableness of the use of force is normally an issue for the jury," *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004) (citing *Abraham*, 183 F.3d at 290-91), Rankin has adequately stated a Fourth Amendment claim against Majikes. *See, e.g., Williams v. Papi*, - - - F. Supp. 2d - - -, 2014 WL 3055369, at *5 (M.D. Pa. July 3, 2014) ("But, even if, following discovery, the reasonableness of Defendant's use of force is settled before the case reaches the jury, it is surely premature to expect the Court to make such a resolution at the motion to dismiss stage, when the only issue before it is to determine whether Plaintiffs Complaint alleges facts that 'plausibly give rise to an entitlement for relief.'").

### iv.    Dessoye and Crane

Defendants Dessoye, the City of Wilkes-Barre's Chief of Police, and Crane, its Deputy Chief of Police, also seek dismissal of the Fourth Amendment claim.  They argue

that § 1983 prohibits vicarious liability, and that Rankin fails to plead their personal involvement in the alleged deprivation of his constitutional rights. In opposition, Rankin contends that the Amended Complaint sufficiently avers a claim for supervisory liability against Dessoye and Crane.

"It is well-recognized that '[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.'" *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (quoting *Bistrian v. Levi*, 696 F.3d 352, 366 n.5 (3d Cir. 2012)). Instead, a state actor is liable only for his or her own unconstitutional conduct. *Id.* The Third Circuit has identified two general ways in which a supervisor-defendant may be liable for unconstitutional action taken by subordinates.

> First, liability may attach if they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995)).

*Id.*

The Third Circuit has set forth a four-part test to determine whether an official may be held liable under § 1983 for failure to supervise. In addition to identifying a "supervisory policy or practice" that the defendant failed to employ, a plaintiff must prove that:

> (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure.

*Barkes*, 766 F.3d at 317 (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989); *Brown v. Muhlenberg Twp.*, 269 F.3d 205 (3d Cir. 2001)). A failure to properly train subordinates may constitute the "supervisory policy or practice" at issue. *See Brown*, 269

F.3d at 217; *see also McNeil v. Borough of Folcroft*, No. 13-3592, 2014 WL 5880125, at \*4 (E.D. Pa. Nov. 13, 2014).

Rankin will be permitted to proceed with his Fourth Amendment claim against Dessoye and Crane because the Amended Complaint contains sufficient factual allegations to support a supervisory liability theory.  Here, Dessoye and Crane are alleged to have had responsibility over the training and supervision of the City Officers and Sergeants. (*Am. Compl.*, ¶¶ 12-13.)  Rankin also avers that they failed to train in methods for avoiding the use of excessive or deadly force, including the use of live action simulations and other generally accepted police training methods regarding the avoidance of the use of such force. (*Am. Compl.*, ¶ 97.)  Rankin further asserts that they were deliberately indifferent to that risk, which resulted in the deprivation of his Fourth Amendment rights. (*Id*. at ¶¶ 12-13, 97-103.)  Dessoye and Crane's motion to dismiss the excessive force claim will be denied.

### v.    Qualified Immunity

In addition to arguing that Rankin fails to state a Fourth Amendment claim, Majikes, Dessoye, and Crane maintain that dismissal of the excessive force claim against them is mandated on qualified immunity grounds.  State actors sued in their individual capacity under § 1983 are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).  The doctrine of "qualified immunity . . . 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" *Blackhawk v. Pennsylvania*, 381 F.3d 202, 215 (3d Cir. 2004) (internal citation omitted)).  In determining whether a defendant is entitled to qualified immunity, a court considers whether the official's acts violated a constitutional or statutory right and (if so) whether that right was clearly established at the time of the violation. *See Yarris v. County of Del.*, 465 F.3d 129, 140-41

(3d Cir. 2006) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).  The Court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).

Here, Rankin adequately alleges a claim for a violation of his Fourth Amendment rights against Majikes, Dessoye, and Crane.  However, the question remains as to whether a constitutional violation in fact occurred.  While "it is important to resolve qualified immunity questions at the earliest possible stages of litigation, the importance of resolving qualified immunity questions early 'is in tension with the reality that factual disputes often need to be resolved before determining whether defendant's conduct violated a clearly established constitutional right.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 242 n.7 (citing *Curley v. Klem*, 298 F.3d 271, 277-78 (3d Cir. 2002)).  Indeed, the Third Circuit has cautioned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009).  This litigation involves one of "the vast majority of cases" where a determination of qualified immunity is inappropriate on a motion to dismiss. *See id*.; *accord Williams*, - - - F. Supp. 2d - - -, 2014 WL 3055369, at *6 ("the Complaint does indicate that Defendant violated Williams's constitutional rights by using excessive force to effect a Fourth Amendment seizure against him.  Moreover, the protections of the Fourth Amendment are sufficiently clear that Defendant should have known that shooting Williams to death violated those protections.  It may be that discovery will cast a new light on the qualified immunity analysis.  But on the face of Plaintiffs Complaint, there is certainly no reason to believe that qualified immunity exists as a matter of law . . . .").  Therefore, the present application for qualified immunity is premature,

although Defendants may raise the argument again at a later stage in the proceedings.

### vi.   City of Wilkes-Barre

The City of Wilkes-Barre seeks dismissal of the Fourth Amendment claim on the basis that Rankin fails to identify and allege the existence of an unlawful municipal policy or custom. In opposition, Rankin argues that the City of Wilkes-Barre's policies and/or customs of (1) "failing to reprimand, discharge, or otherwise discipline police officers who used excessive force," (2) "failing to promulgate and disseminate appropriate and reasonable guidelines for the use of excessive force by police officers," and (3) "failing to train police officers in appropriate and reasonable guidelines for the use of offensive conduct" all caused his alleged injuries. (Doc. 35, 27.)

Municipal employers cannot be held vicariously liable for the constitutional violations committed by their employees. *Monell v. NYC Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Instead, "[m]unicipal liability only attaches when a plaintiff demonstrates that an official policy or custom caused the asserted constitutional deprivation." *Moeck v. Plesant Valley School Dist.*, 983 F. Supp. 2d 516, 524 (M.D. Pa. 2013) (citing *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007)).

"Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir.1996). In addition, a "policy may be established . . . [by] a municipality's failure to train its employees." *Moeck*, 983 F. Supp. 2d at 524 (*citing Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Monell*, 436 U.S. at 691-92, 98 S. Ct. 2018.

Here, Rankin alleges that the City of Wilkes-Barre had a policy or custom of failing

to discipline officers that used excessive force. (*Am. Compl.*, ¶ 89.) Rankin also alleges that the City of Wilkes-Barre failed to promulgate appropriate and reasonable guidelines for the use of offensive conduct by its police officers. (*Id.* at ¶ 81.)   Likewise, the Amended Complaint states that the City of Wilkes-Barre failed to provide training in the use of excessive or deadly force and methods for avoiding the unnecessary use of such force. (*Id.* at ¶ 97.)

Once a plaintiff identifies a municipal policy or custom, "he must 'demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.'"   *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)).   Where the policy does not facially violate the Constitution, "causation can be established only by 'demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice.'"   *Id.*   (citations omitted).   As the Third Circuit explained in *Berg*, "[f]ailure to adequately screen or train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations."   *Id.*   (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).   However, if no pattern of violations exists, "the plaintiff bears a high burden to establish deliberate indifference.   He must demonstrate that the violation of federal rights was a highly predictable consequence of the municipality's failure to train its employees regarding how to handle recurring situations."   *Moeck v. Pleasant Valley School Dist.*, 983 F.Supp.2d 516, 524 (M.D. Pa. 2013) (citing *Berg*, 219 F.3d at 276).   "The fact that a situation is likely to recur and the predictability that a municipal employee will violate federal rights without adequate training can reflect deliberate indifference."   *Id.*

Rankin has pled facts sufficient to state a municipal liability claim.   Here, he alleges

that the City of Wilkes-Barre had a policy or custom of failing to discipline officers for their use of excessive force.   In addition, Rankin adequately alleges that the City of Wilkes-Barre's failure to train its officers on avoidance of force techniques amounts to deliberate indifference to the unreasonable use of deadly force by its officers, and that its failure to train resulted in a pattern of "improper shootings of innocent persons." (*Am. Compl.*, ¶ 100.) Rankin will be permitted to proceed with his Fourth Amendment claim against the City of Wilkes-Barre.

### vii.    Punitive Damages

Lastly, City Defendants seek dismissal of Rankin's request for punitive damages against them in their individual capacities for the alleged deprivation of his Fourth Amendment Rights.[6] City Defendants argue that the allegations in the Amended Complaint, even if true, fail to rise to the level sufficient to warrant the imposition of punitive damages.

The punitive damages claim against the remaining individual City Defendants in their personal capacities, *i.e.*, Majikes, Dessoye, and Crane, for their alleged deprivation of Rankin's Fourth Amendment rights will not be dismissed.   Punitive damages are available against state or local officials in their personal capacities when their conduct "is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 1640, 75 L. Ed. 2d 632 (1983); *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989). Because the allegations in the Amended Complaint, if true, may provide a basis for a punitive damage award against Majikes, Dessoye, or Crane, Rankin will be permitted to proceed with his request for punitive damages against these individuals.

---

[6]    Rankin has withdrawn his claim for punitive damages against the City of Wilkes-Barre. (Doc. 35, 28.)   Additionally, all official capacity claims will be dismissed, and "[p]unitive damages cannot be recovered from defendants in their official capacities." *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988).

**B.     State Law Claims**

In addition to the § 1983 claims, Rankin asserts state law claims for assault, battery, and intentional infliction of emotional distress against all Defendants.  Plains Defendants and City Defendants seek dismissal of all of Rankin's state law claims.

**1.     Plains Defendants**

Plains Defendants' motion to dismiss Rankin's state law claims will be denied.  The entirety of Plains Defendants' argument seeking dismissal of these claims provides: "Plains Township and its named officers are immune from liability unless the Plaintiff Rankin can establish a cause of action satisfying the requirements of 42 C.S.A. § 8542.  Inasmuch as Plaintiff Rankin cannot so satisfy the Pennsylvania Subdivision Tort Claims Act exceptions, the employees of Plains Township enjoy absolute immunity in this matter under Pennsylvania law."  (Doc. 21, 11-12.)  As stated by the Third Circuit, "arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) (citing *Commonwealth of Pa. v. HHS*, 101 F.3d 939, 945 (3d Cir. 1996)).  Because Plains Defendants' argument to dismiss the state law claims is raised only in passing without any development, their motion to dismiss the state law claims will be denied.  Moreover, the Pennsylvania Political Subdivision Tort Claims Act does not extend immunity to employees that engage in "willful misconduct," and, as such, does not bar Rankin's claims against individual Plains Defendants for assault, *see  Torres v. Allentown Police Dep't*, No. 13-3066, 2014 WL 4081477, at *10 (E.D. Pa. Aug. 18, 2014), battery, *see id.*, or intentional infliction of emotional distress, *see Kokina v. Breiner*, 557 F. Supp. 2d 581, 595 (M.D. Pa. 2008).

**2.     City Defendants**

City Defendants also seek dismissal of Rankin's assault, battery, and intentional

infliction of emotional distress claims.[7]   Individual City Defendants argue that they are immune from suit pursuant to the Pennsylvania Political Subdivision Tort Claims Act. Alternatively, they contend that Rankin's state law claims fail as a matter of law.

### a.    Immunity

First, individual City Defendants seek dismissal of the state law claims pursuant to the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA"), 42 Pa. Cons. Stat. Ann. § 8541, *et seq*.   Section 8541 provides that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." *Id*. at § 8541.  The PPSTCA grants municipal employees the same immunity as agencies, *id*. at § 8545, except that employees are liable for their conduct if it amounts to "a crime, actual fraud, actual malice or willful misconduct," *id*. at § 8550.   Willful misconduct in the PPSTCA "is synonymous with the term 'intentional tort.'" *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) (quoting *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289, 293 (Pa. 1994)).   In essence, Pennsylvania law "deprives public employees of immunity for intentional torts." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001). Because Rankin sets forth intentional tort claims for assault, battery, and intentional infliction of emotional distress, the state law claims will not be dismissed on immunity grounds.

### b.    Failure to State a Claim

City Defendants also argue that Rankin fails to state a claim for assault, battery, or intentional infliction of emotional distress.

---

[7]    Rankin has withdrawn his state law claims against the City of Wilkes-Barre. (Doc. 35, 28.)

### i.     Assault and Battery

In moving to dismiss Rankin's assault and battery claims, City Defendants argue that because only Majikes is alleged to have fired his gun, these claims fail as a matter of law against the other individual City Defendants.  City Defendants further contend that Rankin fails to state a claim against Majikes because he only used the amount of force required to make an arrest.  Rankin, conversely, asserts that he adequately states claims for assault and battery under Pennsylvania law.

Under Pennsylvania law, "[t]he tort of assault requires that the defendant act with the intent to place the plaintiff in apprehension of imminent harmful or offensive bodily contact and that the plaintiff actually experience such apprehension." *Dull v. W. Manchester Twp. Police Dep't*, 604 F. Supp. 2d 739, 754 (M.D. Pa. 2009) (citing *Heverly v. Simcox*, No. 05-1370, 2006 WL 2927262, at *9 (M.D. Pa. Oct. 11, 2006); *D'Errico v. DeFazio*, 763 A.2d 424, 431 n.2 (Pa. Super Ct. 2000)).  The tort of battery, on the other hand, "requires proof that the defendant acted with the intent to cause harmful or offensive bodily contact with the person of the plaintiff and that such contact actually followed." *Id*. (citing *Fulks ex rel. Daniel v. Gasper*, 439 F. Supp. 2d 372, 379 (M.D. Pa. 2006); *Montgomery v. Bazaz–Sehgal*, 742 A.2d 1125, 1130 (Pa. Super. Ct. 1999)).  "Police officers are privileged to commit these torts using a reasonable amount of force when effectuating an arrest." *Id*. (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633-34 (3d Cir. 1995); RESTATEMENT (SECOND) OF TORTS § 118, 132 (1965)).  "Use of unreasonable or excessive force dissolves the privilege." *Id*. (citing *Groman*, 47 F.3d at 634; RESTATEMENT (SECOND) OF TORTS § 133).

Rankin will be permitted to proceed with his assault claim against individual City Defendants.  First, with respect to this claim, City Defendants are incorrect insofar that they argue that the assault claim can be advanced solely against Majikes since he is the only individual alleged to have fired his weapon and made contact with Rankin.  Significantly,

"the definition of assault in Pennsylvania does not have same the physical contact requirement necessary to state a claim for battery.  Therefore, it is unnecessary for [Rankin] to allege offensive bodily contact to support his cause of action for assault because that is not an element of the claim." *Kist v. Fatula*, No. 2006-67, 2007 WL 2404721, at *19 (W.D. Pa. Aug. 17, 2007).   Here, Rankin alleges that the officers intended to place him in apprehension of the imminent use of excessive or deadly force against him when they were aware of his location and had their weapons trained and/or targeted on him. (*Am. Compl.*, ¶¶ 35-39, 107.)  And, he further alleges that he experienced such apprehension as a result of their conduct. (*Id*. at ¶ 36-37.)  The allegations in the Amended Complaint are sufficient to state an assault claim under Pennsylvania law.

Moreover, the Amended Complaint adequately sets forth a battery claim against Defendant Majikes.  Specifically, Rankin alleges that Majikes intended to cause harmful contact when he discharged his weapon, and that offensive conduct occurred when he was shot in the back. (*Am. Compl.*, ¶¶ 39, 45, 52.)  Furthermore, in view of the facts pled in the Amended Complaint and as discussed previously, Rankin sufficiently alleges that Majikes' use of force was excessive or unreasonable.  Thus, Rankin will be permitted to proceed with his battery claim against Majikes.  However, the battery claim against all other individual City Defendants will be dismissed because Rankin fails to allege that any actual contact resulted from the acts of these individuals. *See, e.g., Benjamin v. Fassnacht*, - - - F. Supp. 2d - - -, 2014 WL 4056959, at *9 (E.D. Pa. Aug. 15, 2014) (battery claim failed as a matter of law because the plaintiff testified that he was never touched); *Jones v. O'Rourke*, No. 06-738, 2008 WL 2571228, at *17 (M.D. Pa. June 25, 2008) ("Some physical contact between the defendant and the plaintiff must occur, or a plaintiff's battery claim fails.").

### ii.      Intentional Infliction of Emotional Distress

Lastly, individual City Defendants seek dismissal of Rankin's intentional infliction of

emotional distress claim.   In order to state a claim for intentional infliction of emotional distress under Pennsylvania law, a plaintiff must allege four elements: (1) the conduct of the defendant was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the distress was severe. *See Walker v. N. Wales Borough*, 395 F.Supp.2d 219, 232 (E.D. Pa. 2005) (citing Chuy v. *Phila. Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979)).

Individual City Defendants argue that the intentional infliction of emotions distress claim should be dismissed because "there are no facts to support his assertion that any of the individual City Defendants either acted outrageously or extremely or with the specific intention of causing him emotional distress." (Doc. 22, 26.)   Rather, they contend that Rankin was only shot because of his "oppositional, dangerous and hostile behavior following his reign of terror" which directly resulted "from a series of decisions and behaviors undertaken by Plaintiff himself." (*Id*. at 25-26.)

Rankin will be permitted to proceed with his intentional infliction of emotional distress. Based on the facts as set forth in the Amended Complaint, Rankin was lawfully present in the City of Wilkes-Barre when he was approached, aggressively pursued, and cornered by numerous police officers before he was ultimately shot in the back.   While City Defendants' motion to dismiss portrays the circumstances of this incident in a different light, Rankin's allegations, taken as true for purposes of the instant motion, sufficiently state that the conduct of individual City Defendants was intentional and their use and show of force against him was extreme and outrageous. *See, e.g., Rosembert v. Borough of East Lansdowne*, 14 F. Supp. 3d 631, 646 (E.D. Pa. 2014); *Garey v. Borough of Quakertown*, No. 12-799, 2012 WL 3562450, at *5 (E.D. Pa. Aug. 20, 2012).   Therefore, the claim will not be dismissed at this stage in the proceedings.

**C.      More Definite Statement**

In addition to seeking dismissal of all claims, Plains Defendants request, in the alternative, that Rankin be ordered to file a more definite statement.  Rule 12(e) of the Federal Rules of Civil Procedure allows a party to move for a more definite statement of a pleading "which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

"Because Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim, motions for a more definite statement are 'highly disfavored.'" *Country Classics at Morgan Hill Homeowners' Ass'n v. Country Classics at Morgan Hill, LLC*, 780 F. Supp. 2d 367, 370-71 (E.D. Pa. 2011) (quoting *Hughes v. Smith*, No. 03-5035, 2005 WL 435226, *4 (E.D. Pa. Feb. 24, 2005)).  As such, few pleadings are proper subjects for a motion under Rule 12(e).  *Pozarlik v. Camelback Assoc., Inc.*, No. 11-CV-1349, 2012 WL 760582, at *2 (M.D. Pa. Mar. 8, 2012).  "[Rule] 12(e) motions will be granted only if a pleading is so vague or ambiguous that the opposing party cannot reasonably be required to make a responsive pleading." *Country Classics*, 780 F. Supp. 2d at 371 (quotation and citation omitted).

The motion for a more definite statement will be denied.  The Amended Complaint contains sufficient factual allegations detailing the claims against Defendants.  Indeed, the Amended Complaint details the factual bases of Rankin's Fourth Amendment claim, as well as his state law claims.  As these allegations are not so vague or ambiguous that Defendants are unable to formulate a reasonable response to the Amended Complaint, the request for a more definite statement will be denied.

**D.      Leave to Amend**

Rule 15 of the Federal Rules of Civil Procedure permits a court to grant a party leave to amend its pleadings. *See* Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id*.  As such, "if a complaint is subject to a Rule 12(b)(6)

dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  In this context, "'futility' means that the complaint, as amended, would still fail to state a claim upon which relief could be granted." *Shave v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997)).  In this case, because the above-identified deficiencies regarding Rankin's Fourth Amendment claim against Plains Defendants and Defendants Hine, Ziegler, Freeman, Dudick, Wychock, Dumont, Crawford, Whitebread, and Valatka, the Fourteenth Amendment claim against all Defendants, and the battery claim against all individual City Defendants except Majikes are not curable by amendment, leave to amend these claims would be futile.  Therefore, these claims will be dismissed with prejudice.

## IV. Conclusion

For the above stated reasons, the motions to dismiss will be granted in part and denied in part.  Rankin's constitutional claims against Plains Defendants will be dismissed; however, he will be permitted to proceed against them on his state law claims.  With respect to City Defendants, Rankin will be permitted to proceed with his Fourth Amendment claim against the City of Wilkes-Barre, as well as against Majikes, Dessoye, and Crane in their individual capacities only.  Rankin will also be permitted to proceed with his assault and intentional infliction of emotional distress claims against individual City Defendants. However, Rankin's state law battery claim will be dismissed as to all individual City Defendants except Majikes.

An appropriate order follows.

December 5, 2014                                    /s/ A. Richard Caputo
Date                                                        A. Richard Caputo
                                                              United States District Judge